THOMAS DUNN, Appellant, v. OIL DEVELOPMENT COMPANY.—1 S. W. (2d) 127.

Division Two, October 10, 1927.

*S. Mayner Wallace* for appellant.

*Fordyce, Holliday & White, Elmer C. Adkins, Bennett C. Clark* and *Walter R. Mayne* for respondent.

HENWOOD, C.—On May 12, 1922, Thomas Dunn filed suit in the Circuit Court of the City of St. Louis against the Oil Development Company and William C. Uhri and Edward W. Uhri,.as agents of said company, for the recovery of $10,000, in damages, alleging, as the basis of his suit, that on and prior to July 3, 1919, within the State of Missouri, he was solicited and persuaded by defendants to buy one hundred shares of the capital stock of said company for the sum of $10,000, and that, without his knowledge at the time, neither said company nor its said agents had complied with the provisions of the Act of 1913, relating to domestic and foreign investment companies, commonly known as the "Blue Sky Law," and, therefore, were not lawfully authorized to sell stock in said company or to otherwise transact business for said company in this State. At the time of filing his suit, plaintiff caused to be attached certain cash funds of said company on deposit in the Liberty Central Trust Company of St. Louis. Prior to the trial plaintiff dismissed as to the defendant William C. Uhri. At the close of plaintiff's case in chief the court sustained a demurrer as to the defendant Edward W. Uhri, and thereupon plaintiff took an involuntary nonsuit as to said defendant. The jury found in favor of the defendant Oil Development Company, and the plaintiff, after first moving for a new trial and then for a judgment in his favor, without avail, was allowed an appeal to this court.

Plaintiff's petition, omitting all formal parts, reads as follows:

"Plaintiff, Thomas Dunn, by attorney, states that the defendant, Oil Development Company, is a corporation organized and existing under the laws of the State of Delaware, and as such that said corpo-

ration, at all times herein referred to, was attempting and undertaking to engage, and was engaging, within the State of Missouri, in the carrying on of the business of an oil development company and of a foreign investment company without having first qualified or attempted to qualify so to do under the laws of Missouri (particularly the Act of the General Assembly of Missouri approved on April 7, 1913, and commonly known as the "Blue Sky Law") prescribing the conditions upon which foreign corporations may be licensed to do or carry on business in Missouri and permitted to sell such company's capital stock within this State; and plaintiff also states that, at all such times, the defendants, William C. Uhri and Edward W. Uhri, were stockholders in and agents of and for said corporation, but that neither of said individual defendants had registered with the Bank Commissioner of this State or otherwise attempted to comply with the provisions of the said act.

"Plaintiff states that on prior to the third day of July, 1919, within the State of Missouri, the defendants solicited and persuaded this plaintiff to invest the sum of ten thousand dollars in the capital stock of said company, and this plaintiff, then reposing confidence in said individual defendants and at that time not knowing that none of said defendants had or possessed no lawful authority to issue, sell or otherwise dispose of said stock within this State, did, on said day, pay over said sum of money for such investment to said defendants, who, thereupon, in consideration thereof, made and delivered to plaintiff a certain certificate (No. 15) of said company for one hundred shares of no par value, of the capital stock thereof.

"Plaintiff further states that he has offered and that he continues to offer to return to said defendants the said certificate; that, by reason of the facts set forth herein, he has been damaged by said defendants to the amount of the sum of money stated; and that he has demanded of said defendants the return of said money, no part of which has been restored to him by either of said defendants.

"Wherefore, plaintiff prays judgment against said defendants, and each of them, for ten thousand dollars, together with interest thereon at the rate of six per centum per annum and costs."

The trial answer of the defendant Oil Development Company consisted of a general denial only. Its original answer contained, in addition to a general denial, three special defenses: first, that the Act of 1913, commonly known as the "Blue Sky Law," was unconstitutional; second, that the shares of stock purchased by plaintiff were issued to and owned by Edward W. Uhri, and were by him sold to plaintiff; third, that, by reason of plaintiff's acts in connection with the purchase of said shares of stock and his knowledge of and participation in the business affairs of said company from July 3, 1919, until May 12, 1922, he was estopped from repudiating the

purchase of said shares of stock. A demurrer by plaintiff as to all of said special defenses was sustained.

At the beginning of the trial objection was made to the introduction of any evidence for the reason that plaintiff's petition did not state a cause of action and for the further reason that the Act of 1913 (Blue Sky Law) was unconstitutional. The court overruled this objection; likewise, the demurrers to the evidence offered at the close of plaintiff's case in chief and at the close of all of the evidence. However, the verdict and judgment below being for the defendant Oil Development Company, the question of whether plaintiff's petition states a cause of action, and the ruling of the trial court in sustaining plaintiff's demurrer to the special defenses contained in said defendant's answer, and other rulings adverse to said defendant, are not before us on this appeal, and, therefore, will not be considered.

Under the pleadings and the theory of trial adopted by both sides, the sole issue before the trial court and jury was whether the shares of stock in question belonged to the Oil Development Company and were sold to plaintiff by the company, through its officers and agents, or whether said shares of stock were owned by Edward W. Uhri and were sold to plaintiff by him as an individual stockholder. The parties, however, do not agree as to the legal effect of the evidence. On the issue of fact, above stated, plaintiff contends that the evidence as a whole or the evidence of the defendant establishes his right of recovery as a matter of law. Aside from the question of plaintiff having any legal basis of recovery under his petition, the defendant contends that the evidence on the issue mentioned was conflicting and that, therefore, this issue was settled by the jury's verdict; and that there being no reversible error in the trial court's rulings on the admission and exclusion of evidence and in the giving and refusal of instructions, adverse to plaintiff, the verdict and the judgment rendered in accordance therewith must be upheld.

The evidence scatters over a wide field and abounds with repetitions, but all facts necessary to a proper consideration of the questions presented for our decision will be stated, in substance.

On direct examination the plaintiff testified, as follows:

On July 3, 1919, Edward W. Uhri came to his office in St. Louis and told him that he (Uhri) had gotten up the Oil Development Company, and that one hundred shares of stock had been set aside for a party who didn't take it, and that they wanted to sell the stock and wanted him (the plaintiff) to have it. He told Uhri he had no money with which to buy the stock and didn't want it, but Uhri stayed there for more than a half hour and told him about the stock, all of the prospects of the company, and gave him the names of the interested parties. He then told Uhri that if he bought the stock he would have to give them his note at five per cent interest

and pay it as soon as he could. Uhri called again and handed him the certificate of stock and he gave Uhri his note for $10,000, with five per cent interest, on demand, but he didn't know whether it was on the same day as the first interview or not. Uhri represented that he got up the company, that it was his company, and that he was an officer of the company. He paid $5000 on the note on October 8, 1919, and $5,204.27, covering balance and interest, on January 7, 1920, and that he destroyed the note after he paid it off. He had known William C. Uhri, father of Edward W. Uhri, about twenty-five years, and first met Edward W. Uhri in June, 1919, when he made a friendly call on his father at his father's house on Grand Avenue in St. Louis. He identified his certificate of stock (Ex. A) and his two checks given in payment of his note (Exs. B and C), which were offered in evidence in connection with his testimony.

The certificate of stock (Ex. A) is in the usual form. It is numbered, "No. 15," and certifies that Thomas Dunn is the owner of one hundred shares of the capital stock of the Oil Development Company, incorporated under the laws of Delaware, with a capital stock of 5,000 shares, without par value, the certificate being issued July 3, 1919, and signed by Edw. W. Uhri, vice-president, and Chas. D. Long, secretary, with the corporate seal affixed.

Exhibits B and C are plaintiff's bank checks, dated October 18, 1919, and 1/7/1920, payable, respectively, to Edward W. Uhri, in the sum of $5000, and Edward W. Uhri, Treasurer, in the sum of $5,204.27, given in payment of plaintiff's note, above mentioned.

The plaintiff further testified that he made the following notation on the first check (Ex. B): "To apply on Note dated July 3/19 for $10,000," but did not make the other notation thereunder, as follows: "For deposit to acct. Oil Development Co. Edward W. Uhri." Also, that on the second check (Ex. C) he made the notation: "Bal. in full for Note Dated July 3/19 for $10,000," but did not write the word "Treasurer" after the name Edward W. Uhri in the body of the check, and did not make the notation: "Deposited for Acct. Oil Development Co." or write the words "Edw. W. Uhri Treas." on the back of the check. And plaintiff further testified that he offered to surrender his certificate of stock to the company at the time they bought the shares of some of the stockholders in the spring of 1921.

On cross-examination the plaintiff said that on the occasion of his visit with William C. Uhri in June, 1919, the elder Mr. Uhri told him of the success of his son, Edward W. Uhri, in organizing oil companies and of the nice profits his son had made out of the business, leaving him with the impression that Edward W. Uhri was organizing companies for the business of locating and disposing of oil wells to the Standard Oil Company; and also told him that he and his son had stock in the Oil Development Company, that the com-

pany was all right, that his son was able to manage it and would be manager of it; that they had sold stock to their friends and neighbors, and that they would like to have him (the plaintiff) go along with them and be one of them, but the elder Mr. Uhri further said he was not talking to sell stock and if there was any stock to be had he would have bought it in himself; that he named several prominent business men of St. Louis as stockholders and officers of the company, and then called in his son and introduced him; that he (the plaintiff) had every confidence in the elder Mr. Uhri and relied on his statements, but that he did not say he would like to have stock in the company, because he didn't want it, and he told the elder Mr. Uhri he had no money with which to buy stock.

Further testifying on cross-examination the plaintiff admitted that he made his note and his bank checks in payment thereof to Edward W. Uhri, personally, and that he made the following memorandum which appears on the back of his certificate of stock (Ex. A):

"Edwin W. Uhri July 3d 1919 $10000. Gave my note which I paid Oct. 19 - 5000 - 1/7-20 - 5000 & int."

He admitted also that, while he had confidence in the elder Mr. Uhri and his son and in the success of the company, he realized he "took a chance" in buying his stock and in all such investments; that he was not asked to sign a stock subscription list and never saw the subscription list; that he discussed the progress of the company with other stockholders, but never made any inquiry as to its plan of organization or business methods; that he received a financial statement of the company's business in 1920 and gave his proxy to another stockholder for the stockholders' meeting in January, 1921, and did not demand the return of his money at any time between July 3, 1919, and January, 1921; that he wrote Edward W. Uhri a letter, dated July 18, 1921 (Ex. 1), in which he offered to sell his stock for $125 per share, or at a profit of $2500 on his one hundred shares, and on July 19, 1921, he signed a transfer of his certificate of stock in blank and left the same at the Mercantile Trust Company of St. Louis to be delivered to Mr. Edward W. Uhri on payment of $12,500 for the same; that on April 22, 1922, he wrote another letter (Ex. 3) to Edward W. Uhri, complaining of the conditions surrounding the transfer of the stock to him and requesting that the same be taken off of his hands, and letters of like import (Exs. D and 4) to William C. Uhri, on April 22, 1922, and May 4, 1922.

In connection with these admissions the plaintiff insisted that he bought his stock from the company and not from Edward W. Uhri, individually, and he gave his note to Mr. Uhri instead of the company, because he understood the company could not take a note in payment of stock; that he dealt altogether with Mr. Uhri, because he always treated him as the company; that he wrote the letters men-

tioned to the Messrs. Uhri, instead of the company, on the advice of his attorney; and further that he told Mr. Edward W. Uhri in June, 1921, that he wanted him to buy his stock at $125 per share, because he (Uhri) had bought out other stockholders at that price, and that Mr. Uhri told him the company didn't have surplus money enough to buy his stock.

The plaintiff offered in evidence a part of the deposition of Charles D. Long, which shows that he had been the company's secretary since its incorporation and its counsel a part of the time; that it was organized in June, 1919, under the laws of Delaware, with a capital stock of 5000 non-par-value shares; that there was originally issued 3750 shares and was then outstanding capital stock of about $230,000 or $235,000; that the primary object of the company, specified in its charter, was the business of buying and selling oil leases, drilling for oil, operating leases, purchasing production, and matters incidental to such operations; that the company engaged in business in Texas, Oklahoma and New Mexico and the business had always been conducted from the company's offices in Texas; that the secretary and other officers had resided in St. Louis at different times and the stock book and minute records of stockholders' and directors' meetings had been kept in St. Louis, where some of such meetings were held; that the company never had an office in St. Louis and never transacted business in Missouri, though stock had been issued and assigned in St. Louis; and that on July 3, 1919, Edward W. Uhri was vice-president, treasurer and general manager of the company.

Part of the deposition of Edward W. Uhri offered in evidence by the plaintiff shows that the company had a bank account in St. Louis and had held meetings of stockholders and directors there, and for about one month after July 3, 1919, had a temporary office there, at which time all books needed for the active operation of the company were moved to Ft. Worth, Texas; that he drew a salary as an officer of the company, and as trustee secured stock subscriptions to the amount of $250,000, prior to the incorporation of the company.

The plaintiff also offered in evidence (Ex. E) a certificate of the Finance Commissioner of Missouri to the effect that the Oil Development Company had never complied with the Act of 1913 (Blue Sky Law); and also certain sections of the Delaware statute, which are of no importance in this recital of the evidence.

On the defendant's side, Charles D. Long, secretary of the company, identified Exhibits 5, 6 and 7, and the same were offered in evidence in connection with his testimony. Exhibit 5 is a memorandum of stock subscribers made from the original subscription agreement, which the witness said had been lost. This memorandum shows that Wm. C. Uhri subscribed and paid for one hundred shares at

$10,000, represented by certificates numbered 49 and 50, and that Edw. W. Uhri subscribed and paid for one hundred shares at $10,000, represented by certificate numbered 14, and that Thomas Dunn (the plaintiff) does not appear thereon. Exhibit 6 is Certificate No. 14 and the stub thereof. It is the same in form as No. 15, above described, and certifies that Edward W. Uhri is the owner of one hundred shares of stock in the company, the certificate being issued July 3, 1919, and signed by Edw. W. Uhri, Vice-President, and Chas. D. Long, Secretary, with the corporate seal affixed. Across the face of the certificate the following notation appears, written with pen and ink: "Cancelled July 3rd, 1919 New Certificate (No. 15) issued to Thomas Dunn." The stub bears the words: "Original subscription" and also shows the receipt of the certificate signed by Edward W. Uhri. Exhibit 7 is the stub of Certificate No. 15, showing the issuance of the certificate to Thomas Dunn on July 3, 1919, covering one hundred shares of stock transferred from Edward W. Uhri on the same date. At the top it bears the words: "(Stamp attached to old certificate see cert. no. 14)," and at the bottom appears the receipt of Thomas Dunn for the certificate on July 3, 1919, written on a separate piece of paper and pasted on the stub.

The witness further testified that all of the stock was subscribed at the time of the incorporation of the company, and that there was no stock for sale after May 31, 1919, and that the plaintiff did not buy stock from the company; that Edward W. Uhri paid for his stock by check two or three days before July 3, 1919, and requested that his certificate be not issued for a few days, as he intended to sell his stock, and that his check be held until his certificate was issued; that on the morning of July 3, 1919, Uhri called for his certificate and his check was deposited on that day; that later that morning Uhri returned with his certificate (No. 14) and reported a transfer of the same by him to Thomas Dunn, and requested the issuance of a new certificate to Thomas Dunn, and that such certificate was then issued; that he (the witness) wrote the cancellation notation across the face of Certificate No. 14 and also the stamp notation on the stub of Certificate No. 15 and the receipt pasted thereon; that Uhri signed the note over to the company by an "unrestricted endorsement" and the same was bought by the company at a directors' meeting held a few days thereafter; and further that he wrote the word "Treasurer" after the name Edward W. Uhri in the body of the plaintiff's second check (Ex. C) and also the "deposit" notation on the back of the check, but did not write the "deposit" notation on the back of the first check (Ex. B).

William C. Uhri testified that when the plaintiff visited at his home in June, 1919, he inquired about investments and when he (Uhri) told him of the Oil Development Company the plaintiff seemed

very much interested and wanted some of the stock, and when his son told the plaintiff there was no more stock for sale he was more anxious than ever to get some of the stock; that his son showed him plaintiff's note, but he had nothing to do with the transaction, and when plaintiff talked to him in the Liberty Central Trust Company about paying the note he referred plaintiff to the company's office; and further that he still retained his stock in the company.

Edward W. Uhri testified that the stock subscription agreement was closed on May 31, 1919, and the company was incorporated shortly thereafter; that when plaintiff was told the names of some of the subscribers at the home of William C. Uhri in June, 1919, and was told that the stock sale was closed, the plaintiff said: "If it is good enough for you gentlemen to put your money into, I would like to get some of it," and that plaintiff asked him to see if some of the stockholders would give up some of their stock interests, and that he told plaintiff he would report to him later; that he later saw Mr. Luehrmann and Mr. Schlafley and other stockholders and reported to plaintiff the first week in June that he was unable "to round up any stock for him;" that plaintiff asked him to continue his efforts and he next saw plaintiff on July 3, 1919; that plaintiff then wanted to buy his one hundred shares of stock and he finally agreed to sell them to plaintiff; that he showed plaintiff his certificate (No. 14) and plaintiff read it over, front and back; that he signed the transfer of his certificate (No. 14) in plaintiff's office and later that day returned to plaintiff's office and gave plaintiff his certificate (No. 15) and plaintiff gave him his note for $10,000 in payment for the stock; that three or four days later he discounted the note to the company and endorsed it "in blank;" that he endorsed plaintiff's second check (Ex. C), but did not endorse the first check (Ex. B)

Further testifying, this witness said that the memorandum (Ex. 5), identified by Mr. Long, was a complete list of stock subscribers, and, in answer to inquiries concerning the issuance of his certificate (No. 14) and the payment for his stock and the cancellation of his certificate (No. 14) and the issuance of Certificate No. 15 to plaintiff and the sale of plaintiff's note to the company, his evidence is substantially the same as that of the witness Long.

In rebuttal for plaintiff, George E. W. Luehrmann and J. F. Schlafley testified that they were original subscribers for stock in the company, but Edward W. Uhri did not at any time discuss with them the proposition of selling some of their stock to Thomas Dunn (the plaintiff).

Plaintiff also offered in rebuttal paragraphs 2 and 3 of defendant's original answer, it being stated in paragraph 3 of said answer that Edward W. Uhri transferred and assigned plaintiff's note to the company on July 3, 1919, the same day he received it from

plaintiff; also the part of Edward W. Uhri's deposition in which he said he did not remember the exact date he sold the note to the company, but "possibly" and "just as like as not" it was on July 3, 1919, the same day he received it; and also Section 3 of Article IX of the Constitution of Delaware, Section 14 of the Delaware Statutes, entitled "Corporations," and a part of the decision of the Chancery Court of Delaware in the case of Cahall v. Lofland, 114 Atl. 224, and a part of the decision of the Supreme Court of Delaware in the same case, 118 Atl. 6, showing that corporations organized under the laws of Delaware are prohibited from taking promissory notes in payment for shares of stock.

I. The plaintiff complains of the action of the trial court in excluding the evidence of the witness George G. Mudge, department manager of the Liberty Central Trust Company, as to the bank accounts and banking transactions of Edward W. Uhri and the Oil Development Company on July 1, 2 and 3, 1919, as the same appeared on the ledger sheets of those dates, the purpose of this evidence being to show that Edward W. Uhri did not have sufficient money on deposit to pay for his one hundred shares of stock in the company at the time his check was given in payment thereof, and that the check of the company given to him for the plaintiff's note was to clear his own check in the sum of $10,000, and that both checks were deposited on July 3, 1919. It appearing that the witness did not make the original entries on the ledger sheets and that the absence of the person who made such entries was not accounted for, no proper foundation was laid for the admission of the evidence offered and the objection thereto was properly sustained. [22 C. J. 875; Printing Co. v. Ins. Co., 263 S. W. 454; Clothing Co. v. Railroad Co., 285 S. W. 755; Reineke v. United States, 278 Fed. 724.] The cases cited and relied on by plaintiff in support of his contention are clearly distinguishable on the facts and, for that reason, the rule announced therein has no application here.

II. Complaint is made also of the giving of instruction numbered 1, because it did not submit to the jury the question of Edward W. Uhri's good faith in the acquisition of the shares of stock in question and in the transfer of the same to plaintiff, if they found he did acquire and transfer said shares of stock to plaintiff. There is no merit in this complaint. Plaintiff's petition, quoted above in full, clearly shows that plaintiff based his right of recovery solely and only on the sale of stock in the company to him at a time when neither the company nor its agents, originally joined as co-defendants, had any "lawful authority to issue, sell or otherwise dispose of said stock," by reason of their failure to comply

with the laws of Missouri (Blue Sky 'Law) relating thereto. The question of good faith (or fraud) in the transaction was not tendered by the petition and, therefore, was not met by the answer, and, not being within the scope of the pleadings, could not have been properly covered in the instructions to the jury. The instruction complained of fairly submitted the sole issue tendered by the pleadings and the evidence and the bone of contention throughout the trial, that is, whether the stock purchased by plaintiff belonged to the company or Edward W. Uhri. It follows that there was no error in the giving of this instruction. In his attack on this instruction under Point II of his brief, learned counsel for plaintiff, apparently, overlooked his own statement made in his discussion of the legal effect of the evidence under Point I, where he says on page 11 of his brief: ''The fact issue, defined by the pleadings, was whether the stock sold to the plaintiff was stock belonging to the company or whether same was stock belonging to Edward W. Uhri.''

III. It is earnestly contended by plaintiff that the evidence establishes his right of recovery as a matter of law and that there is no substantial evidence to support the verdict against him. We are unable to agree with learned counsel in this contention. There is evidence tending to show that plaintiff was anxious, if not eager, to buy stock in the company after being told by Edward W. Uhri, organizer of the company, that the stock sale was closed; that he requested Uhri to get some stock for him from some of the other stockholders; that, failing in this, he pressed his request for some of Uhri's stock; that Uhri's name appeared on the stock subscription list, which was closed before the negotiations with plaintiff began; that Uhri's stock certificate (No. 14) was transferred to plaintiff, then cancelled and a new certificate (No. 15) issued to plaintiff by the officers of the company in the usual way; that plaintiff's note and his checks in payment of the same were made payable to Uhri, personally; that subsequent complaints by plaintiff about the transaction were made to Uhri, personally, and by letters addressed to him, personally, no such complaints being made by plaintiff to the company nor to the officers of the company in their official capacity. These plain, outstanding facts, as against plaintiff's evidence to the contrary, not only presented a submissible case but are amply sufficient to support the verdict. True, from the proof of Uhri's close connection with the company and his handling of its business affairs and the sale and transfer of his shares of stock to plaintiff on the same day his certificate (No. 14) was issued and other circumstances surrounding the transaction, it might reasonably be inferred that the shares of stock, in truth and in fact, belonged to the company and were sold to him in a round-about way to evade

the Blue Sky Law and, perhaps, for other reasons, but it was, clearly, for the jury to decide this question, and, there being substantial evidence to support the conclusion reached by the jury, it is not our province to interfere. In the face of conflicting evidence, plaintiff's requests for a directed verdict were properly refused and his motion for judgment after the verdict properly overruled. [Gannon v. Laclede Gaslight Co., 145 Mo. 502; Laughlin v. Ry. Co., 275 Mo. 1. c. 465; State ex rel. v. Cox, 310 Mo. 1. c. 376.]

It is our opinion that plaintiff was accorded a fair and impartial trial on the case presented by his petition and that the judgment of the trial court should be affirmed. It is so ordered. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion of HENWOOD, C., is adopted as the decision of the court. All of the judges concur.